IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GEORGE COLE, #301244, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 2:18-CV-1023-WKW-CSC |
| ) | |
| DEBORAH TONEY, et al., ) | |
| ) | |
| Respondents. ) | |

### RECOMMENDATION OF THE MAGISTRATE JUDGE

Petitioner, a convicted state prisoner, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1.[1] Petitioner challenges his 2015 conviction and sentence for murder, entered after a jury trial in the Circuit Court of Montgomery County, Alabama. *Id*. at 1-2. The Alabama Court of Criminal Appeals affirmed Petitioner's conviction and sentence on direct appeal,[2] and Petitioner's pro se Rule 32 motion for post-conviction relief, was denied, without an evidentiary hearing, and that denial was affirmed on appeal.[3] *Id*. at 2-4. For the reasons set forth below, the Magistrate Judge RECOMMENDS that Petitioner's petition be DENIED without an evidentiary hearing and this case be DISMISSED.

**I.   Background**

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Consalvo v. Sec'y for Dep't of Corr*., 664 F.3d 842, 845 (11th Cir. 2011). It is Petitioner's burden to establish by clear

---

[1]   References to document numbers are to the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk. Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

[2]   *Cole v. State*, 231 So. 3d 151 (Ala. Crim. App. 2016).

[3]   *Cole v. State*, CR-16-1075 (Ala. Crim. App. Apr. 20, 2018).

and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[4] The state courts' findings of fact have fair support in the record, and Petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous. Consequently, the Court defers to and adopts the following facts set forth by the Alabama Court of Criminal Appeals, in affirming Petitioner's sentence and conviction. *See* Doc. 7-7.

> [Petitioner] was indicted on a charge of murder for the shooting death of [Clem Renaldo Hill]. His case was first tried in May 2015, but the trial court declared a mistrial when the jury was unable to reach a verdict. The case was retried and, on August 13, 2015, the jury found [Petitioner] guilty as charged in the indictment. On September 15, 2015, the trial court sentenced [Petitioner] to life imprisonment.
>
> On October 14, 2015, [Petitioner] filed a motion for a new trial, alleging misconduct by two jurors. On October 15, 2015, [Petitioner] filed a second motion for a new trial and, in this motion, he alleged, in relevant part, that the verdict was against the weight of the evidence. The trial court held a hearing on the motions for a new trial. No witnesses were presented, but the trial court considered the arguments of the parties. The trial court denied [Petitioner's] motions for a new trial.
>
> Facts
>
> Paige Flynn testified that she was a cashier at the Liberty Mart gas station and was working on the day of the murder. She came to know some of the regular customers at the gas station, and among them were Clem Hill, known as 'Pop,' and Ryshawn London, known as 'Big Yoshi,' and the [Petitioner]. She said that on October 21, 2013, around 2:00 p.m., she was behind the counter at the register, and Big Yoshi came into the store. Pop came into the store shortly thereafter, and Pop and Big Yoshi stood in front of the counter and talked. Flynn testified that the two men knew each other and that, initially, their conversation was 'like normal,' but that it escalated into an argument. (R. 30.) She saw Big Yoshi take out a gun and hold it by his side. He told Pop that they could 'take it outside,' and they went outside. Flynn said she sat on the floor because Big Yoshi was holding a gun, and she called 911. When the 911 operator asked her what was going on, she raised up a bit and looked out the window. She saw that Cole had shown up. She saw [Petitioner] pointing a gun at Pop, and she saw [Petitioner] shoot Pop. At that time she saw no gun in Pop's hand. [Petitioner] fled from the scene and Pop stumbled into the store, holding his side. She did not see anything in Pop's hand, but when he fell to the floor she saw a gun fall to the floor near his waist.

---

[4] "In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by 'clear and convincing evidence.'" 28 U.S.C. § 2254(e)(1).

Robert Smith, the cashier who was scheduled to relieve Flynn when her shift was over at 2:00 or 2:30 p.m., saw Big Yoshi and Pop arguing inside the store, and then he saw them walk outside. He then saw Big Yoshi with a gun, but he did not see Pop with a gun. When he looked outside again, he did not see the gun in Big Yoshi's hand, so he thought the argument had ended. He testified that he then saw [Petitioner] and another man who appeared to have tried to break up the argument, and he saw [Petitioner] with Big Yoshi's gun. Because the argument appeared to be over, Smith said, he turned his attention away from the men outside. Seconds later he heard a gunshot, turned, and saw [Petitioner] with a gun. He had not seen [Petitioner] point the gun at anyone. He did not see who fired the shot that killed Pop. Pop stumbled into the store and collapsed. Smith did not see Pop holding a gun, but when Pop collapsed, Smith saw a gun on the floor near Pop's waist. Smith testified that, when he viewed one of the surveillance videos taken outside, he saw that Pop had a gun in his hand.

Chris Sweeney testified that he was a customer at the store on the day of the shooting. While he was inside, he saw Big Yoshi and Pop and they looked like they were having an argument. He did not see either man carrying a gun. Pop and Big Yoshi went outside and continued to argue. He saw Big Yoshi with a gun outside, but he did not see Pop with a gun. Sweeney testified that he went outside, and he told the men to calm down or they would go to jail. After the argument appeared to be over, he saw [Petitioner] walk up to the men. He said he did not know what the argument was about, and he did not know why [Petitioner] became involved in it. Sweeney said he ran when he saw [Petitioner] pull a gun.

Johnny Robinson testified that Pop had a rental car and that he rode with Pop to the Liberty Mart. Pop walked inside the store, and Robinson heard arguing so he went into the store. He saw Pop and Big Yoshi arguing, and he saw Big Yoshi pull a gun from his waistband and hold it next to his side. Pop and Big Yoshi went outside, and Robinson went with them. Pop and Big Yoshi argued for a short while longer, Robinson said, and then they stopped arguing, had settled their dispute, and continued in general conversation. Big Yoshi put the gun back in his waistband. Robinson did not see Pop with a gun either inside the store or outside of the store. Robinson testified that [Petitioner] drove up to the store with two other men, and he got between Pop and Big Yoshi. He put one hand on Big Yoshi and one hand on Pop; [Petitioner] encouraged Big Yoshi to go with him. Pop knocked [Petitioner's] hand away and told [Petitioner] to get back and that he had nothing to do with the argument. Pop and [Petitioner] then began to argue, Robinson said, and Pop stepped behind Big Yoshi and tried to move him around like a human shield. [Petitioner] pulled the gun from his waistband and cocked it, and all of the onlookers ran away. Pop did not pull a gun, Robinson said, and Big Yoshi did not take his gun out again after [Petitioner] arrived. He said that [Petitioner] was trying to get 'a shot off.' (R. 153.) Robinson heard a gunshot and, he said, 'when the shot went off, we already... knew what went on.' (R. 153.) He said that [Petitioner] and the two men left in the car they had driven to the store.

3

Robinson testified that: he did not see Pop with a gun before they went to the store; that he did not see Pop pull a gun during the argument with Big Yoshi; he never saw Pop threaten [Petitioner]; that it did not appear to him that Pop was trying to physically attack or kill [Petitioner]; and he never saw Pop pull a gun or a knife on [Petitioner]. Robinson acknowledged that, when viewing the surveillance video, he saw Pop reach toward his pocket, and he said that he guessed Pop was pulling up his saggy pants. He testified that he did not see Pop with a gun during the entire incident that led up to his murder, but he acknowledged that the surveillance video showed that Pop had a gun when he staggered back into the store.

Demon Williams testified that he went to the Liberty Mart on the afternoon of the shooting. He said that, when he first arrived, he heard some arguing so he sat in his truck trying to find out where the people were. The door to the store opened and he saw Big Yoshi and Pop arguing inside. The men stepped outside, he said, argued a bit more, then calmed down, and Williams felt comfortable enough to get out of the truck. The argument had never gotten physical, he said, and he did not see either man with a gun. Williams testified that as he stood there, trying to see what Big Yoshi and Pop were doing, two men came up from behind him and approached Big Yoshi and Pop. One of those men 'had some words' with Pop. (R. 171.) Williams said that he saw one of those men reach for a weapon, so he tried to get into the store but he heard the gunshot go off before he was able to do so. He did not see Pop reach for a weapon, he only saw one of the other men reach. Williams testified that Pop came into the store and fell on the floor. At that time he saw a gun fall to the floor, but he reiterated that he had not seen Pop with a gun outside of the store.

Pop died from a gunshot wound to the chest. A .40 caliber class bullet from that gunshot was removed from Pop's body, and forensic testing revealed that the bullet might have been fired from the Glock brand firearm recovered from a residence where [Petitioner] was later arrested. The firearm that fell next to Pop's body when he collapsed on the floor was a loaded Taurus brand pistol. That gun was jammed when it was received for testing, according to the State's firearm expert.

Kenneth Jordan testified on [Petitioner's] behalf. He stated that he and [Petitioner] drove up to the Liberty Mart during the time that Big Yoshi and Pop were arguing outside. Jordan testified that he was carrying a gun at the time, and that he knew that [Petitioner] was carrying a gun. When they arrived at the store, Big Yoshi had his gun out, and Jordan and [Petitioner] told them to calm down, and also told Big Yoshi to go home because someone would call the police because he had his gun out. Pop looked at [Petitioner], Jordan said, and flipped his hand and pushed [Petitioner]. Pop told him and [Petitioner] to leave, and also told them that they had nothing to do with his argument with Big Yoshi. Jordan testified that Pop stepped back and pulled his gun out and, a few seconds later, [Petitioner] pulled his gun out and cocked it. Pop grabbed Big Yoshi and tried to use him as a shield. Pop tried to fire a shot at [Petitioner], but his gun only made a clicking noise. [Petitioner]

4

then fired his gun at Pop. On cross-examination Jordan acknowledged that, in the statement he gave to a detective after the shooting, he had said that [Petitioner] 'ran up on Pop, [l]ike he wanted to fight him.' (R. 213.)

[Petitioner] testified in his own behalf. He said he shot Pop to protect himself because Pop was going to shoot him. [Petitioner] testified that when he arrived at the gas station and saw Pop and Big Yoshi arguing, he grabbed Big Yoshi and told him to 'chill out,' and Pop told him to get out because he had nothing to do with the argument. He and Pop had words and the conversation got more and more heated, he said. He knew that Pop carried a gun, and he saw Pop reach and pull a gun out. Pop held on to Big Yoshi and raised his gun. [Petitioner] said he was scared and believed Pop was going to shoot him, so he pulled his own gun out and cocked it. [Petitioner] testified that when he saw Pop bring his gun up, Big Yoshi broke away from Pop, and [Petitioner] fired the fatal shot at Pop.

[Petitioner] argues that the trial court erred when it denied his first motion for a new trial in which he alleged juror misconduct. [Petitioner] argues that Juror #202 failed to respond to the trial court's voir dire questions regarding whether anyone knew anything about the case or had read or heard anything about the case, and whether anyone knew the victim during his lifetime. He further argues that Juror #117 posted updates to her Facebook page during the week of [Petitioner's] trial, even though the trial court had instructed the jurors not to post entries on social media. In support of his arguments, [Petitioner] relies on exhibits that he purportedly admitted during the hearing on his motion for a new trial, however, as the State correctly points out in its brief to this Court, the record does not include any exhibits from the hearing. [Petitioner] responds in his reply brief by stating, 'The record describes, discusses and includes the six (6) exhibits in support of [Petitioner's] motions. (C. 152-159),' ([Petitioner's] reply brief, at p. 3), but the pages of the record to which [Petitioner] cites contain only the motion for a new trial, and no exhibits. [Petitioner] states, 'In an effort to assist this reviewing court, please find attached copies of the aforementioned exhibits ' (*Id.*)

> Initially, we note that '[w]here the appellant fails to include pertinent portions of the proceeding in the record on appeal, this court may not presume a fact not shown by the record and make it a ground for reversal.' *Carden v. State*, 621 So. 2d 342, 345 (Ala. Crim. App. 1992). It is the appellant's duty to provide this court with a complete record on appeal, and we will not predicate error on a silent record. *See Wilson v. State*, 727 So. 2d 869 (Ala. Crim. App. 1998).

*Gamble v. State*, 791 So. 2d 409, 418 (Ala. Crim. App. 2000).

Furthermore, it is well settled that attachments to briefs are not part of the record and therefore cannot be considered by this or any other appellate court. *E.g., Huff v. State*, 596 So. 2d 16, 19 (Ala. Crim. App. 1991). Because [Petitioner's]

5

entire argument on this issue is based on the information he contends was established by the exhibits not contained in the record, his argument for reversal has no support in the record before us. Therefore, [Petitioner] is not entitled to relief on this claim of error.

Doc. 7-7 at 2-7.

## II. Discussion

By way of overview, after Petitioner was convicted and sentenced to life imprisonment, Petitioner filed a motion for a new trial, asserting that Juror #202 "did not disclose her knowledge of the case and of the victim," and that Juror #117, "the jury foreperson, disobeyed the Court's instructions about social media during trial." Doc. 7-1 at 154. Relating to Juror #117, Petitioner specifically argued, Juror #117 "posted updates during the week of [Petitioner's] trial in clear disregard of the Court's order to refrain from such activity." *Id*. at 158. As noted above, Petitioner also filed a second motion for new trial, asserting the jury's verdict contravened the weight of the evidence and the trial court erred by not re-charging the jury fully. *Id*. at 166-170. On November 5, 2015, the trial court denied Petitioner's new trial motions. Doc. 7-7 at 3.

On March 7, 2016, Petitioner appealed and asserted the following three grounds for relief: (1) "The trial court erred when it denied [Petitioner's] motion for new trial due to juror [#202] misconduct by failing to disclose prior knowledge about the case and of the decedent"; (2) "The trial court erred when it denied [Petitioner's] motion for new trial due to juror [#117] misconduct by failing to comply with the Judge's order to refrain from social media during the trial"; and (3) "The trial court erred when it failed to order a new trial due to the verdict being in conflict with the weight of the evidence; specifically [Petitioner's] assertion of self defense and the fact that the decedent possessed a gun that was jammed." Doc. 7-4 at 4.

On September 2, 2016, the Alabama Court of Criminal Appeals affirmed Petitioner's conviction. Doc. 7-7. Petitioner neither sought a rehearing, nor did he seek certiorari review in the Alabama Supreme Court. Doc. 1 at 2. A certificate of judgment was issued on September 21, 2016. Doc. 7-8.

A few months later, in January 2017, Petitioner filed a pro se petition for post-conviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. The Alabama Court of Criminal Appeals summarized Petitioner's grounds for relief as follows:

> (1) Trial counsel failed to object to an alleged failure to administer a qualifying oath to jurors;

    (2) Trial counsel failed to file a motion to dismiss the charge of murder and seek a plea deal and/or jury instruction for the offense of manslaughter;

    (3) Trial counsel failed to prepare [Petitioner] to testify; and

    (4) Appellate counsel failed to provide a complete record on appeal.

Doc. 7-13 at 3. (citation omitted).

On June 8, 2017, the Circuit Court of Montgomery County summarily dismissed Petitioner's petition. Doc. 1-1. Relevant here, regarding Petitioner's ground four, the Circuit Court reasoned:

> The affidavit submitted by appellate counsel shows he did everything he could to preserve the juror misconduct issue and provide a complete record to the Court of Criminal Appeals. His representation did not fall below the standards expected of appellate counsel.
>
> Additionally, the record shows the juror misconduct claim itself was without merit and would have failed on the merits on appeal. Nothing in the record reveals misconduct on the part of juror 202 or anything that prejudiced the Petitioner. There is also no evidence of misconduct on the part of juror 117. The trial court was correct in denying the Petitioner's motions for new trial.

*Id*. at 4. Petitioner appealed and reasserted his claims. Doc. 7-13 at 8. On April 20, 2018, the Alabama Court of Criminal Appeals affirmed the judgment of the Circuit Court. *See id*. Petitioner filed an application for rehearing, which was overruled on May 25, 2018. Doc. 7-15. Petitioner filed a petition for writ of certiorari in the Alabama Supreme Court on June 8, 2018 (Doc. 7-16), which was later denied by the Court on August 10, 2018. Doc. 7-17.

Turning now to Petitioner's grounds for relief, Petitioner asserts ineffective assistance of appellate counsel for counsel's failure to provide a complete record on appeal. *See* Doc. 1. As explained in greater detail below, Petitioner argues, because Jurors #202 and #117 allegedly committed juror misconduct and because Petitioner's appellate counsel, in his direct appeal, failed to assure the appellate record included the exhibits offered and admitted during the hearing on his motions for a new trial, Petitioner was denied effective assistance of counsel. Doc. 1 at 9. Petitioner also asserts ineffective assistance of trial counsel when, in connection with filing the motions for new trial, trial counsel failed to alert the trial court to Juror #117's knowledge of decedent in furtherance of Petitioner's juror misconduct argument. *See* Docs. 1, 11.

Respondent, however, argues, appellate counsel was not ineffective and further asserts, Petitioner's claim as to Juror #117, relating to this juror's alleged knowledge of the victim, is procedurally barred. *See* Doc. 7. In his reply, Petitioner maintains counsel was ineffective and further asserts his claim is not procedurally barred pursuant to *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

### A.    Standard of Review for Claims Adjudicated on Merits

"When it enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress significantly limited the circumstances under which a habeas petitioner may obtain relief." *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. 2010). The AEDPA modified the federal courts' role in reviewing state prisoner habeas applications to prevent "federal habeas 'retrials'" and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). For claims adjudicated on the merits by the state courts and properly before the federal court, a writ of habeas corpus shall be granted only if the state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law under § 2254(d)(1) "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Under the "unreasonable application" standard, this court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See Williams v. Taylor*, 529 U.S. 362, 411–13 (2000) (O'Connor, J., delivering the opinion of the Court regarding Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what

arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter,* 562 U.S. 86, 102 (2011).

As for the "unreasonable determination of the facts" prong under § 2254(d)(2), the federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain,* 576 U.S. 305, 313-14 (2015) (citation omitted). "If [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id*. at 314 (quotation marks and citations omitted). Factual-issue determinations made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## Analysis

### *Juror #202's Knowledge of the Decedent and Juror #117's Social Media Posts*

Petitioner claims his appellate counsel on direct appeal was ineffective for failing to make sure the record on direct appeal was supplemented with the exhibits to his trial counsel's motions for new trial as to his claims against Jurors #202 and #117. Respondent asserts the Alabama state courts' disposition of Petitioner's ineffective assistance claims was neither contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of the facts.

The controlling federal law for assessing claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* announced a two-part test by which an attorney is considered constitutionally ineffective if (1) his "performance was deficient" and (2) that "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is highly deferential, and the court indulges a strong presumption that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).

9

Under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the results of the proceeding fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* test, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *see Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

Here, after Petitioner's trial, Petitioner's trial counsel filed two motions for new trial. In the first motion, trial counsel argued, because Juror #202 was Facebook friends with the decedent's friend, Juror #202 knew of the case and knew who the decedent was on the day of *voir dire*. Trial counsel also argued Juror #117 posted social media updates during the week of Petitioner's trial, in violation of the Court's order to refrain from such activity. To supplement this motion, Petitioner's trial counsel "purportedly included various exhibits, including: a) an affidavit from himself, stating that he would have peremptorily struck Juror #202 [] had he known she was Facebook friends with a close friend of Clem Hill; b) trial transcript excerpts; [and] c) printed materials from Floyd Upshaw's Facebook page, showing that Juror #202 was Upshaw's Facebook 'friend.'" Doc. 7-11 at 23-24. After the trial court denied Petitioner's two motions, Petitioner appealed. On appeal, appellate counsel allegedly failed to see to it that the record on appeal was supplemented with these exhibits.

In his pro se Rule 32 petition, Petitioner raised the claims that his appellate counsel, on direct appeal, was ineffective for failing to supplement the record with the exhibits. *See* Doc. 7-11 at 25. Petitioner pursued the claims on appeal from the denial of his Rule 32 petition and exhausted the claims by pursuing them in his petition for writ of certiorari filed with the Alabama Supreme Court. Doc. 1 at 10-11.

10

In its memorandum opinion affirming the trial court's denial of Petitioner's Rule 32 petition, the Alabama Court of Criminal Appeals noted that Petitioner specifically alleged his appellate counsel was ineffective for failing to provide a complete record on appeal. Doc. 7-13 at 3.

Applying *Strickland*'s two-part analysis to Petitioner's failure-to-supplement claim, the Alabama Court of Criminal Appeals reasoned:

> In his affidavit, appellate counsel Emmett Hampton stated that he drafted [Petitioner's] brief and that he made appropriate motions for new trial raising the juror-misconduct claims. (C. 65.) Furthermore, in its order dismissing [Petitioner's] petition on this issue, the circuit court held:
>
>> 'The affidavit submitted by appellate counsel shows he did everything he could to preserve the juror misconduct issue and provide a complete record to the Court of Criminal Appeals. His representation did not fall below the standards expected of appellate counsel.
>>
>> Additionally, the record shows the juror misconduct claim itself was without merit and would have failed on the merits on appeal. Nothing in the record reveals misconduct on the part of juror 202 or anything that prejudiced [Petitioner]. There is also no evidence of misconduct on the part of juror 117. The trial court was correct in denying [Petitioner's] motions for new trial.'
>
> (C. 123.)
>
> Here, [Petitioner] failed to satisfy his burden of proving that his appellate counsel's performance was deficient or that the performance prejudiced him. Accordingly, this issue does not entitle [Petitioner] to any relief.
>
> Furthermore, a circuit court may summarily dismiss a Rule 32 petition pursuant to Rule 32.7(d), Ala. R. Crim. P.,
>
>> '[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition.'

Doc. 7-13 at 12-13. It is a matter of speculation whether, on appeal, Petitioner's

11

claims of juror misconduct would have entitled him to the extraordinary relief of a new trial. As the Court of Criminal Appeals noted, the Circuit Court opined that Petitioner's juror misconduct claims were without merit. Finally, Petitioner's cursory allegations demonstrate no reasonable likelihood that the outcome of the proceedings would have been different had his appellate counsel supplemented the record in accord with Petitioner's preference.

The state court decision rejecting Petitioner's claims that his counsel was ineffective for failing to adequately supplement the record on direct appeal was neither contrary to, nor an unreasonable application of, *Strickland*, *see* 28 U.S.C. § 2254(d)(1), nor did it involve an unreasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2). Petitioner is, therefore, not entitled to habeas relief on these claims.

### B.   Standard of Review for Procedurally Defaulted Claims

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). Before a § 2254 petitioner may obtain federal habeas corpus review, he must "exhaust" his federal claims by raising them in the appropriate court, giving the state courts an opportunity to decide the merits of the constitutional issue raised. *See* 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Walker*, 533 U.S. 167, 178-79 (2001). To exhaust a claim fully, a petitioner must "invok[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In Alabama, a complete round of the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to that court, and a petition for discretionary review—a petition for a writ of certiorari—filed in the Alabama Supreme Court. *See Smith v. Jones*, 256 F.3d 1135, 1140-41 (11th Cir. 2001); Ala. R. App. P. 39 and 40. The exhaustion requirement applies to state post-conviction proceedings as well as to direct appeals. *See Pruitt v. Jones*, 348 F.3d 1355, 1359 (11thCir. 2003).

Habeas claims not properly exhausted in the state courts are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). "[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas."

*Coleman*, 501 U.S. at 735 n.1 (citations omitted); *see Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003).

## Analysis

### *Juror #117's Knowledge of the Decedent*

In addition to the claims set forth above, Petitioner asserts counsel[5] was ineffective in failing to argue, in connection with the motions for new trial, juror misconduct due to Juror #117's knowledge of the decedent. Doc. 1 at 11. Specifically, Petitioner claims Juror #117, "disclosed at some point after *voir dire* that she knew Clem Hill as he used to come to her house and hang out with her husband. She disclosed that she knew Hill but was not familiar with his name and realized that she knew him when she saw pictures of him during trial. This was not disclosed during *voir dire* or during trial." Doc. 11 at 12. In his petition, Petitioner maintains, this ground was not presented to the Circuit Court of Montgomery County because Petitioner "did not learn of the same until 2017." Doc. 1 at 11.

Respondent argues, because Petitioner "failed to timely raise the claim under Rule 32.2(c) of the Alabama Rules of Criminal Procedure, it would be futile for him to seek further state court relief on it now." Doc. 7 at 14. Consequently, Respondent asserts this claim is procedurally defaulted and because Petitioner fails to show "cause and prejudice," Petitioner is prohibited from raising this claim in federal habeas corpus. *Id*.

In reply, Petitioner maintains, Juror #117's connection to Hill would have been grounds for challenge or removal and further, Juror #117's failure to disclose her connection to the decedent violated Petitioner's right to a fair and impartial jury. Doc. 11 at 13. Petitioner maintains, "[it] is unclear from the extant of the record why [Petitioner's] counsel in connection with the motion for a new trial, who did bring up issues concerning Juror #117, did not grasp this and bring this to the state court's attention." *Id*. at 13. Petitioner further admits, while he did not assert this claim in his pro se Rule 32 petition, Petitioner asserts, he may pursue this claim pursuant to the Supreme Court's holding in *Martinez*. *Id*. at 13-14.

Initially, the Court notes, there is no dispute that this claim was not presented to any state court and Petitioner cannot return to state court to exhaust this claim because the direct-review

---

[5] While Petitioner's petition is unclear as to which counsel – trial or appellate – he asserts this claim, in his reply, Petitioner appears to assert his trial counsel was ineffective in failing to raise this argument in the first motion for new trial. *See* Doc. 11 at 13.

13

process is over, and it is too late for him to pursue it on rehearing in the Alabama Court of Criminal Appeals and in a petition for certiorari review in the Alabama Supreme Court. Thus, the exhaustion and preclusion rules coalesce into the procedural default. *See Coleman*, 501 U.S. at 735 n.1; *Henderson*, 353 F.3d at 891.

The Court can reach the merits of Petitioner's procedurally defaulted claims "only in two narrow circumstances. First, [Petitioner] may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default. *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright v.] Sykes,* 433 U.S. [72,] 87 [ (1977)].... Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray,* 477 U.S. at 495-96, 106 S.Ct. at 2678. A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id.*" *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

### *Cause and Prejudice*

> "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir. 1999). To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.; Crawford v. Head,* 311 F.3d 1288, 1327–28 (11th Cir. 2002)."

*Henderson,* 353 F.3d at 892.

The Supreme Court has recognized, counsel's ineffectiveness in properly preserving a claim in state court may constitute sufficient cause to overcome procedural default of another claim. *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986); *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000) ("in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice") (citing *Carrier,* 477 U.S. at 488-89). Generally, "a petitioner cannot rely on the ineffective assistance of post-conviction counsel to establish cause to excuse a procedural default because there is no constitutional right to an attorney in state post-conviction proceedings." *Gore v. Crews,* 720 F.3d 811, 816 (11th Cir. 2013) (citing *Coleman,* 501 U.S. at 752). Likewise, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Edwards,* 529 U.S. at 453.

14

In *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), however, the Supreme Court recognized a narrow equitable exception to the rule in *Coleman* regarding claims of ineffective assistance of trial counsel. It held, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez,* 132 S.Ct. at 1320; *see also Gallow v. Cooper,* 133 S.Ct. 2730 (2013) (Breyer, J., on denial of petition for certiorari) ("The ineffective assistance of state habeas counsel might provide cause to excuse the default of the [ineffective assistance of trial counsel] claim, thereby allowing the federal habeas court to consider the full contours of [the petitioner's] ineffective-assistance claim.").

In *Trevino,* the Court extended the rationale of *Martinez* to cases where, as a matter of systemic operation, the first opportunity to challenge trial counsel's effectiveness is in state post-conviction proceedings. *See Trevino v. Thaler,* 133 S.Ct. 1911, 1918, 1921 (2013). Thus, to demonstrate cause in circumstances where *Martinez* and *Trevino* apply, a petitioner must establish (1) a "substantial" claim of ineffective assistance of trial counsel; (2) the cause for failure to exhaust the claim is ineffective post-conviction counsel or lack of post-conviction counsel in the initial-review collateral proceeding; (3) the state collateral proceeding was the "initial" opportunity to review the claim regarding trial counsel's performance; and (4) the state requires, either by law or as a practical matter, that ineffective assistance of trial counsel claims be raised in the post-conviction proceeding. *Trevino,* 133 S.Ct. at 1918, 1921; *Martinez,* 132 S.Ct. at 1320. An "initial-review collateral proceeding" is a "collateral proceeding[ ] which provide[s] the first occasion to raise a claim of ineffective assistance at trial." *Martinez,* 132 S.Ct. at 1315. The Court in *Martinez* explained that a "substantial" ineffective assistance of trial counsel claim is one with "some merit. *Cf. Miller–El v. Cockrell,* 537 U.S. 322 (2003) (describing standards for certificates of appealability to issue)." *Martinez,* 132 S.Ct. at 1318-19. An "insubstantial" claim, the Court explained, "does not have any merit or [ ] is wholly without factual support, or [ ] the attorney in the initial-review collateral proceeding did not perform below constitutional standards." *Id.* at 1319. The Court went on: "Most jurisdictions have in place procedures to ensure counsel is appointed for substantial ineffective-assistance claims [in state collateral proceedings]." *Id.* at 1319. "And [the Court's ruling] permits a State to elect between appointing counsel in initial-

15

review collateral proceedings or not asserting a procedural default and raising a defense on the merits [of attorney trial error] in federal habeas proceedings." *Id.* at 1320.

If a petitioner can establish cause under *Martinez,* a petitioner still must establish prejudice as a result of the defaulted ineffective assistance of trial counsel claim; that is, but for the error, there is a reasonable probability that the result of the proceeding would have been different. *See Martinez,* 132 S.Ct. at 1321 (remanding the questions "whether [Petitioner's] attorney in his first collateral proceeding was ineffective [and] whether his claim of ineffective assistance of trial counsel is substantial. And the court [of appeals] did not address the question of prejudice."); *see also Trevino,* 133 S.Ct. at 1921 (remanding the questions "whether Trevino's claim of ineffective assistance of trial counsel is substantial [and] whether Trevino's initial state habeas attorney was ineffective").

Initially, the Court notes, while Petitioner asserts this claim was not raised earlier because Petitioner did not learn of same until 2017, in his reply, Petitioner maintains that the record is unclear as to why trial counsel failed to assert this claim in the 2015 motion for new trial. In any event, assuming the *Martinez v. Ryan* exception applies to warrant consideration of this otherwise defaulted claim of ineffective assistance of trial counsel, Petitioner fails to show that this claim is a "substantial" claim or that he was prejudiced. Petitioner's arguments in favor of this claim being considered include, *inter alia*, because Juror #117 knew the decedent, Petitioner did not receive a fair trial before an impartial jury, and it is unclear why trial counsel did not assert this claim in the motions for a new trial. Critically, while Petitioner asserts Juror #117's knowledge of the decedent and counsel's failure to bring this alleged misconduct to the trial court's attention prejudiced Petitioner, this Court notes that the state courts found Petitioner's similar allegation of Juror #202's knowledge of decedent, to be without merit. Petitioner makes no showing that the state courts would have treated this allegation any different than his allegation of juror misconduct against Juror #202. Simply, Petitioner demonstrates neither deficient performance by trial counsel nor resulting prejudice regarding this claim. Therefore, this ineffective-assistance-of-trial-counsel claim lacks merit. The claim is not a "substantial" claim, and Petitioner does not establish cause excusing his default of his claim that his trial counsel rendered ineffective assistance in this regard.

### *Fundamental Miscarriage of Justice*

Nevertheless, the Court must still consider whether it should reach the merits of Petitioner's claim to prevent a fundamental miscarriage of justice. The miscarriage of justice standard is

16

directly linked to innocence. *Schlup v. Delo,* 513 U.S. 298, 321 (1995). Although an actual innocence claim "can itself be defaulted is not to say that the procedural default may not *itself* be excused if the petitioner can satisfy the cause-and-prejudice standard [or fundamental miscarriage of justice exception] with respect to that claim." *Edwards,* 529 U.S. at 453 (emphasis in original). Innocence is not an independent claim; instead, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Schlup,* 513 U.S. at 315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496; *Schlup v. Delo, supra.* "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell,* 547 U.S. 518, 538 (2006) (citations omitted). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims." *Id.* at 537.

"To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable juror would have convicted him.' *Schlup v. Delo,* 513 U.S. 298, 327–328, 115 S.Ct. 851, 867–868, 130 L.Ed.2d 808 (1995)." *Bousley v. United States,* 523 U.S. 614, 623 (1998); *House,* 547 U.S. at 538. In this context, Petitioner must show constitutional error coupled with newly discovered evidence that was not presented at trial that would establish factual innocence rather than mere legal insufficiency. *Bousley,* 523 U.S. at 623–24; *Johnson v. Alabama,* 256 F.3d 1156, 1171 (11th Cir.2001). *See also Schlup,* 513 U.S. at 324.

> *Schlup* observes that:
>
> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.* at 324.

Petitioner does not assert that he has "new" reliable evidence of factual innocence, and there is nothing in the record that suggests a miscarriage of justice will occur if the Court does not reach the merits of his defaulted claim. Petitioner neither presents evidence nor suggests that any exists which could satisfy the difficult standard set forth in *Schlup.* Petitioner's procedurally defaulted claim is, therefore, foreclosed from federal habeas review.

### III. Conclusion

The undersigned magistrate judge RECOMMENDS that Petitioner's § 2254 petition be DENIED without an evidentiary hearing and this case be DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **January 24, 2022**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 10th day of January 2022.

/s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE