IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GEORGE COLE, #301244 | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-CV-1023-WKW |
| | ) | [WO] |
| DEBORAH TONEY, Warden, | ) | |
| Bibb Correctional Facility, and | ) | |
| STEVEN TROY MARSHALL, | ) | |
| Attorney General of the | ) | |
| State of Alabama, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

In 2013, Petitioner George Cole killed Clemon Hill with a bullet to his chest. He fired the fatal shot after the two had a verbal altercation in the parking lot of a gas station.  At his trial in August 2015, Mr. Cole argued self-defense, but the jury said the killing was murder.  Serving a sentence of life imprisonment, Mr. Cole sought but did not find relief on direct appeal or in his state post-conviction proceedings.

In the pending 28 U.S.C. § 2254 petition, the claims of Petitioner arise from the alleged misconduct of two jurors—Juror #117 and Juror #202—and his counsel's purported mishandling of the misconduct.  Petitioner contends that his counsel—at

trial and on appeal—were ineffective under the standards in *Strickland v. Washington*, 466 U.S. 668 (1984). He alleges that the Alabama courts' decision denying his claims alleging ineffective assistance of appellate counsel was an unreasonable application of *Strickland*. He also contends that he has demonstrated cause and prejudice for his procedural default of his claim alleging ineffective assistance of trial counsel.

Disagreeing with Petitioner, the Magistrate Judge entered a Report and Recommendation that Petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus be denied without an evidentiary hearing. (Doc. # 12.) The Magistrate Judge concluded that the state court decision rejecting his claims that his appellate counsel was ineffective "was neither contrary to, nor did it involve an unreasonable application of *Strickland*, *see* 28 U.S.C. § 2254(d)(1), nor did it involve an unreasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2)." (Doc. # 12, at 12.) The Magistrate Judge also concluded that Petitioner's claim alleging ineffective assistance of trial counsel was procedurally defaulted and thus barred from federal habeas review. (Doc. # 12, at 17.)

Petitioner, through counsel, has filed objections to the Recommendation. (Doc. # 17.) Based upon a *de novo* review of those portions of the Recommendation to which Petitioner objects, *see* 28 U.S.C. § 636, the objections

lack merit.  Accordingly, the Recommendation will be adopted, and Petitioner's § 2254 petition will be denied without an evidentiary hearing.

## II.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636, the court conducts a *de novo* review of those portions of the Recommendation to which Petitioner objects.  The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

## III.  DISCUSSION

"[T]o prevail on an ineffective assistance of counsel claim, a habeas petitioner must show both that his counsel's performance was deficient and that counsel's deficient performance prejudiced him."  *Tarleton v. Sec'y, Fla. Dep't of Corrs.*, 5 F.4th 1278, 1287 (11th Cir. 2021) (citing *Strickland*, 466 U.S. at 687).  "To prove prejudice under *Strickland*, a petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Id.* (quoting *Strickland*, 466 U.S. at 694).

The burden on the habeas petitioner to prove prejudice "is heavier still when a federal court is reviewing a state court" under the Antiterrorism and Effective Death Penalty Act of 1996:

> As difficult as it is to prevail on an ineffective assistance prejudice issue in the first court to decide it, the Antiterrorism and Effective Death Penalty Act of 1996 makes it even harder to succeed on that issue in a federal habeas proceeding after a state court has ruled that the petitioner

failed to show prejudice.  To obtain habeas relief, the petitioner must show that the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

*Id.* at 1287–88.

"The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (cleaned up).  "The *Strickland* standard is a general one, so the range of reasonable applications is substantial."  *Id.* (citation and internal quotation marks omitted).  "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)."  *Id.*  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*  Petitioner is unable to meet this high bar.

## A.     <u>Claims of Ineffective Assistance of Appellate Counsel</u>

The analysis proceeds with discussion of the nature of the claims alleging ineffective assistance of appellate counsel, the state courts' resolution of the claims, the Magistrate Judge's findings, Petitioner's objections, and the court's findings.

### 1.   *Nature of the Claims*

Petitioner's claims of ineffective assistance of appellate counsel trace their origins to the alleged transgressions of two jurors.  According to Petitioner, Juror # 117 "posted updates during the week of [Petitioner's] trial in clear disregard of the Court's order to refrain from such activity."  (Doc. # 7-1, at 158.)  Juror #202 did not disclose during *voir dire* that she was Facebook friends with an individual named Floyd Upshaw, who knew the victim, Clem Hill.  At the time of Hill's death, Upshaw posted on his Facebook page about the death of his friend "Pop" (who is the victim, Clemon Hill).

Upon learning of these two jurors' possible misconduct, trial counsel preserved these issues by filing a motion for new trial.  According to Petitioner, his counsel attached the following exhibits to the motion:  (1) an affidavit from himself, stating that he would have peremptorily struck Juror #202 had he known she was Facebook friends with a close friend of Clem Hill's; (2) still frames from Floyd Upshaw's Facebook page in October 2013, in which he talks about his friend, "Pop," who was "killed"; (3) still frames from Upshaw's Facebook account in August (year not disclosed), showing that Juror #202 was Upshaw's Facebook friend; (4) a still frame from Juror #202's Facebook page, showing that Upshaw liked Juror #202's post changing her profile picture on August 9 (year not disclosed); (5) a still frame from Juror #202's husband's Facebook page on August 9 (year not disclosed), where

Upshaw thanked Juror #202's husband for his "encouraging words" when his mom died; Juror # 202 posted on her husband's page, "We love ya Floyd Upshaw"; and (6) still frames from Juror #117's Facebook posts.  (*See* Doc. # 17, at 9–11 nn.3–9; Doc. # 7-1, at 153–59.)  In November 2015, the trial court denied Petitioner's new trial motion.  (Doc. # 7-7, at 3; Doc. # 7-9, at 61.)

Petitioner argues that his appellate counsel was ineffective for failing to supplement the record on direct appeal with these exhibits.  (Doc. # 17, at 4–5.)  He contends that without these exhibits in the appellate record, appellate counsel was unable "to secure relief from an infringement of his right to a fair and impartial jury . . . ."  (Doc. # 17, at 4.)

### 2.   *State Courts' Adjudication*

On appeal, appellate counsel attached the foregoing exhibits to his reply brief. (Doc. # 7-6, at 17–31.)  The attachment came too late, according to the Alabama Court of Criminal Appeals, because "it is well settled that attachments to briefs are not part of the record and therefore cannot be considered by this or any other appellate court."[1]  (Doc. # 7-7, at 7 (citation omitted); *see also* Doc. # 17, at 11–

---

[1] The decision of the Alabama Court of Criminal Appeals explained:

Cole relies on exhibits that he purportedly admitted during the hearing on his motion for a new trial; however, as the State correctly points out in its brief to this Court, the record does not include any exhibits from the hearing.  Cole responds in his reply brief by stating, "The record describes, discusses and includes the six (6) exhibits in support of Cole's motions.  (C. 152-159)," (Cole's reply brief, at p.

12.)  It is undisputed therefore that the exhibits Petitioner said his counsel submitted

in support of the motion for new trial were not part of the appeal record.

The exhibits' omission in the appellate record was raised in Petitioner's Rule

32 post-conviction proceedings.  Petitioner argued ineffective assistance of appellate

counsel for counsel's failure to "marshal the entire record for appellate review."

(Doc. # 17, at 13.)  The reviewing courts denied Petitioner relief.

The Circuit Court of Montgomery County found that

[t]he affidavit submitted by appellate counsel shows he did everything
he could to preserve the juror misconduct issue and provide a complete
record to the Court of Criminal Appeals.  His representation did not fall
below the standards expected of appellate counsel.  Additionally, the
record shows the juror misconduct claim itself was without merit and
would have failed on the merits on appeal.  Nothing in the record
reveals misconduct on the part of juror 202 or anything that prejudiced
the Petitioner.  There is also no evidence of misconduct on the part of
juror 117.  The trial court was correct in denying the Petitioner's
motions for new trial.

(Doc. # 7-9 at 124.[2])  Affirming the judgment of the circuit court, the Alabama Court

of Criminal Appeals held that Petitioner "failed to satisfy his burden of proving that

his appellate counsel's performance was deficient or that the performance prejudiced

him."  (Doc. # 7-13, at 13.)

---

3), but the pages of the record to which Cole cites contain only the motion for a
new trial, and no exhibits.

(Doc. # 7-7, at 7.)

[2] Trial counsel filed two motions for new trial.  Only the motion for new trial discussed in
this opinion is relevant to Petitioner's claims.

### 3.     The Magistrate Judge's Recommendation as to the Claims of Ineffective Assistance of Appellate Counsel

The Magistrate Judge rejected Petitioner's claims that his appellate counsel was deficient under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), and that the state court decision violated § 2254(d)'s standards:

> It is a matter of speculation whether, on appeal, Petitioner's claims of juror misconduct would have entitled him to the extraordinary relief of a new trial.  As the Court of Criminal Appeals noted, the Circuit Court opined that Petitioner's juror misconduct claims were without merit.   Finally, Petitioner's cursory allegations demonstrate no reasonable likelihood that the outcome of the proceedings would have been different had his appellate counsel supplemented the record in accord with Petitioner's preference.

> The state court decision rejecting Petitioner's claims that his counsel was ineffective for failing to adequately supplement the record on direct appeal was neither contrary to, nor an unreasonable application of, *Strickland*, *see* 28 U.S.C. § 2254(d)(1), nor did it involve an unreasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2). Petitioner is, therefore, not entitled to habeas relief on these claims.

(Doc. # 12, at 11–12.)

### 4.     Petitioner's Objection to the Recommendation

Petitioner argues that appellate counsel was ineffective for failure to invoke an appellate procedural rule to supplement the record on direct appeal with the relevant exhibits supporting his trial counsel's motion for new trial.  Petitioner contends that on appeal he had a meritorious claim that the trial court erred in denying his motion for new trial based on juror misconduct; therefore, he argues that

contrary to what the state courts held, his appellate counsel rendered deficient representation by failing to preserve his claim and that he suffered prejudice under *Strickland* because "there was a reasonable probability of success on appeal." (Doc. # 17, at 14.)

### 5.    *Discussion and Rejection of the Objection*

Petitioner is entitled to habeas relief only if the state courts' decision rejecting his ineffective-assistance claim was "contrary to, or involved an unreasonable application of," *Strickland*'s established law, § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

### (a)    The Alleged Misconduct of Juror #117

For starters, Petitioner has not shown that Juror #117 engaged in the misconduct that underlies his *Strickland* claim. He argues that Juror #117 violated the court's directives by posting a Facebook message "during the trial" complaining about missing work for jury duty. (Doc. # 17, at 11.) This argument has material flaws.

First, Petitioner has not pointed to evidence that Juror #117's complaint about being called for duty occurred after, and thus in violation of, the trial court's

directives.[3]  The trial transcript discloses that, just prior to opening statements on August 11, 2015, the trial court instructed the jury to avoid social media; this discourse occurred in the afternoon.  (*See* Doc. # 7-2, at 87 ("Good afternoon, ladies and gentlemen.  I thank you again.  We are prepared to begin this trial."); *see also* Doc. # 7-6, at 30 (Juror # 117's Facebook post that she had jury duty at 2:00 p.m. on August 11).)  Juror #117's Facebook post complaining about jury duty was posted at 7:22 a.m. on August 11.  (Doc. # 7-6, at 31.)  Further corroboration that Juror # 117's Facebook post complaining about jury duty occurred prior to the trial court's instructions is contained in the transcript of the oral argument on Petitioner's motion for new trial.  During oral argument, Petitioner's trial counsel acknowledged that Juror #117 posted her complaints *before* trial and therefore *before* the trial court's instructions.  (Doc. # 7-3, at 150–51; Doc. # 7-1, at 163–64.)  Trial counsel's admission further undercuts the contention that Jury #117 did not comply with the trial court's instructions.  Petitioner points to no evidence establishing the contrary.

Second, Petitioner argues that Juror #117's post indicates that this juror "had misgivings about jury service[,] which . . . could have been the subject of a for cause challenge or motion for removal."  (Doc. # 17, at 11.)  But Petitioner cites no evidence that trial counsel would have exercised a peremptory strike or would have

---

[3] Juror #117's Facebook post states:  "When I get off [work] I got to go back to jury duty damn it man . . . ."  (Doc. # 7-6, at 31.)

moved for her removal.  The affidavit submitted by Petitioner's trial counsel asserted only that he would have moved to strike Juror #202.  The affidavit omits any statement that he would have done the same for Juror #117.  (Doc. # 7-6, at 17.)

Third, Petitioner has not demonstrated that Juror #117's complaint about having to report to jury service impacted her ability to be impartial.  *See* U.S. Const. amend. VI (guaranteeing the accused the right to a trial "by an impartial jury").  For example, Petitioner has not pointed to any evidence that during the trial Juror #117 disobeyed the court's directives not to independently investigate the case and not to discuss the case with anyone, not even with fellow jurors, until "you[] are together as a body deliberating over the facts."  (Doc. # 7-2, at 88.)

The state courts' determination that "[t]here is . . . no evidence of misconduct on the part of juror 117" (Doc. # 7-9, at 124) did not "involve an unreasonable determination of the facts in light of the evidence presented," § 2254(d)(2).  Thus, the state courts' determination that appellate counsel's representation was not deficient in failing to supplement the appeal record with the exhibits needed to challenge Juror # 117's jury service was not an unreasonable application of *Strickland*.

### (b)     The Alleged Misconduct of Juror #202

Petitioner argues that, because Juror #202 did not disclose during *voir dire* that "she knew or at least had been exposed to information about the case and the

11

deceased, Clem Hill," through Facebook, he was denied a trial by an impartial jury guaranteed by the Sixth and Fourteenth Amendments. (Doc. # 17 at 4, 8 (citing Doc. # 7-2 at 75–87).) Petitioner points to the trial exhibits documenting Juror #202's Facebook connection with a third party (Floyd Upshaw), who was a close friend of the victim, Clem Hill.[4] He argues that these exhibits demonstrate that he would have had grounds to challenge for cause Juror #202's service. (Doc. # 17, at 10.) In support of this contention, Petitioner offers the affidavit of his trial counsel who attests that, had he known Juror #202 "had any relation whatsoever with the decedent," he would have stricken her from the jury. (Doc. # 7-6, at 17.)

Petitioner asserts that appellate counsel was ineffective for failing to supplement the record with the exhibits documenting Juror #202's acquaintance on Facebook with one of the deceased's friends. (Doc # 17, at 4, 9–10.) Because trial counsel attests that he would have struck Juror #202 had he known this information,

---

[4] The following is a summary of the exhibits Petitioner relies upon: On October 21, 2013, Upshaw posted on Facebook that his childhood friend "Pop" was killed. (Doc. # 7-6, at 19.) (There is no indication Juror #202 viewed this post.) That same day, Upshaw posted again on Facebook, without naming the victim, Clem Hill, that he had lost one of his best friends. (Doc. # 7-6, at 18.) (Again, there is no indication Juror #202 saw this post.) Five days later, Upshaw made another post on Facebook relating to the decedent's funeral. (Doc. # 7-6, at 20.) (No name is used for the decedent, and there is no indication Juror #202 viewed this post.) On August 9 (year not indicated on exhibit), Juror #202 changed her Facebook profile picture; the post was "liked" by Upshaw. (Doc. # 7-6, at 21.) On August 9 (year not indicated on exhibit), Upshaw posted a message to Juror #202's husband's Facebook page. (Doc. # 7-6, at 22.) The post appears to relate to the death of Upshaw's mother and was liked by both Juror #202 and her husband. (Doc. # 7-6, at 22.) Juror #202 also wrote, "We love ya Floyd Upshaw," on this post. (Doc. # 7-6, at 22.) On August 12 (year not indicated on exhibit), Floyd Upshaw posted a picture with the caption: "I do it for my momma and my potna [sic] pop…they be watching me! #GoneButNeva4gotten." (Doc. # 7-6, at 23.) (There is no indication Juror #202 viewed this post.)

Petitioner argues that his claim has merit and that he has demonstrated prejudice. Hence, he contends that the state courts' "decision that his counsel was not ineffective constituted an unreasonable application of" *Strickland*. (Doc. # 17, at 14.)

The Supreme Court of the United States has held that, to obtain a new trial based on undisclosed information during jury selection, the defendant "must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id.* "To invalidate the result of a . . . trial because of a juror's mistaken, though honest response to a question [on *voir dire*], is to insist on something closer to perfection than our judicial system can be expected to give." *Id.* at 555–56.

Here, Petitioner has not shown that Juror #202 failed to answer honestly a material question during *voir dire*. As Petitioner correctly notes (Doc. # 17, at 8), during *voir dire*, the trial judge presented all jurors with the following inquiry:

> Ladies and gentlemen, [Petitioner] is charged with the offense of murder. This is alleged to have taken place on or about October 21 at 1347 hours at 904 West Edgemont Avenue where it is alleged that during a verbal altercation Mr. Clem Hill was shot and killed.

> I tell you that to ask you, to the best of your knowledge, do any of you know anything about this case?  Have any of you heard anything or read anything about this case given those few facts?
>
> Did any of you during his lifetime know Mr. Clem Renaldo Hill whose year of birth is . . . ?"

(Doc. # 17, at 8 (citing Doc. # 7-2, at 76).)  No juror responded to these inquiries.

(Doc # 17, at 8 (citing Doc. # 7-2, at 76).)

Petitioner points to no evidence that Juror #202 knew the decedent.  Upshaw's posts on Facebook about Clem Hill's death were posted more than a year before the trial and identified Clem Hill only by the nickname, "Pop."  There is no indication that Juror #202 viewed the Facebook posts[5] or that, if she did, Juror #202 knew the posts pertained to the victim.  Petitioner also has not pointed to any evidence that Juror #202 posted anything herself about Clem Hill or about the homicide investigation into Hill's shooting death.  Furthermore, Juror #202's honesty during *voir dire* that she knew one of the potential witnesses, Rayshawn London,[6] lends credence to the view that, if Juror #202 knew the decedent or knew about the shooting, she would have been forthcoming with that information during *voir dire*.

---

[5] During oral argument, counsel for the State represented that Juror #202 had more than 4,000 Facebook friends.  (Doc. # 7-3, at 151.)

[6] Juror #202 answered that she knew one of the individuals involved in the case.  (Doc. # 7-2, at 79.)  When counsel asked whether anyone knew Rayshawn London, nicknamed "Big Yoshi," Juror #202 said that she had met this person, but that they were not friends and that she would be able to be fair notwithstanding this knowledge.  (Doc. # 7-2, at 79–80.)  She confirmed that "knowing or having some knowledge of" him would not cause her "to be more or less fair" during the trial.  (Doc. # 7-2, at 79–80.)

Finally, the trial judge asked if any juror knew the decedent, not whether any juror knew someone who knew the decedent.  To the extent Petitioner contends that the trial judge's inquiry required Juror #202 to reveal her social media relationship with Upshaw, who in turn knew the victim, this assertion is speculative and conclusory.

Petitioner has not demonstrated that Juror #202 failed to respond honestly to the trial court's questioning during *voir dire*, and, thus, he has not shown that her answers would have entitled him to a new trial.  The state courts' determination that "[n]othing in the record reveals misconduct on the part of juror 202 or anything that prejudiced the Petitioner" (Doc. # 7-9, at 124) did not "involve an unreasonable determination of the facts in light of the evidence presented," § 2254(d)(2).  The state courts' determination that appellate counsel's representation was not deficient in failing to supplement the appeal record with the exhibits needed to challenge Juror #202's jury service and that Petitioner had not proven prejudice were reasonable applications of *Strickland*.  *See* § 2254(d)(1).

### 3.    *Conclusion*

Petitioner has not shown that his appellate counsel rendered ineffective representation under *Strickland*'s standards.  It necessarily follows that the Alabama courts' rejection of Petitioner's claims of ineffective assistance of appellate counsel did not result in a decision that was contrary to or involved an unreasonable

application of *Strickland*.  Stated differently, a "reasonable argument" can be made that "counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 562 U.S. at 105.  Accordingly, Petitioner's objection is due to be overruled, and the Magistrate Judge's Recommendation rejecting Petitioner's claim alleging ineffective assistance of appellate counsel is due to be adopted.

**B.**   **Claim of Ineffective Assistance of Trial Counsel**

The analysis proceeds with discussion of the nature of the claim of ineffective assistance of trial counsel, Petitioner's failure to raise the claim in the state courts, the Magistrate Judge's findings, Petitioner's objections, and the court's findings.

**1.**   ***Nature of the Claim***

The contours of Petitioner's claim of ineffective assistance of trial counsel are not clear.  The claim centers on Juror #117's disclosure in 2017 (two years after the trial) that she knew Clem Hill and her failure to notify the trial court during the trial that she knew the victim.  Petitioner asserts that Juror #117

> disclosed in 2017 that she knew Clem Hill as he used to come to her house and hang out with her husband.  She disclosed that she knew Hill but was not familiar with his name and realized that she knew him when she saw pictures of him during the trial.  This was not disclosed during *voir dire* or during trial.

(Doc. # 1, at 9.)

In his petition, he does not fault either trial or appellate counsel.  (*See, e.g.*, Doc. # 1, ¶ 22 (alleging that on direct appeal, Petitioner's "appellate counsel did not

argue with respect to Juror # 117's knowing Hill as that had not been known yet").)

In his brief, however, Petitioner faults his trial counsel for failing to move for a new trial on grounds that Juror #117 knew the victim, Clem Hill:  "It is unclear from the extant record why [Petitioner's trial] counsel in connection with the motion for a new trial, who did bring up issues concerning Juror 117, did not grasp this and bring this to the state court's attention."  (Doc. # 11, at 13.)  His references to "this" are to "Juror 117's knowledge of Clem Hill in state court."  (Doc. # 11, at 13; *accord* Doc. # 17, at 16 (arguing the same in his objection to the Recommendation); *see also* Doc. # 12, at 13 n.5).)  Petitioner also argues that "Juror # 117's connection to Clem Hill would have been ground for a for cause challenge or removal."  (Doc. # 17, at 16.)

### 2.    *Petitioner's Failure to Raise the Claim in State Court*

Petitioner "did not raise the issue concerning Juror # 117's knowledge of Clem Hill" on direct appeal or in the Rule 32 proceeding.  (*See* Doc. # 12, at 13–14; Doc. # 17, at 16.)  Hence, the state courts did not review his claim alleging ineffective assistance of trial counsel.

### 3.    *The Magistrate Judge's Recommendation as to the Claims of Ineffective Assistance of Trial Counsel*

The Magistrate Judge found, and Petitioner did not dispute, that the claim alleging ineffective assistance of trial counsel is procedurally defaulted.   (*See* Doc. # 12, at 13–14; Doc. # 17, at 16 (Petitioner "did not raise the issue concerning Juror

# 117's knowledge of Clem Hill in state court.").)  Petitioner instead argued that he had demonstrated cause and prejudice so as to warrant this court's consideration of the claim.  (*See* Doc. # 11, at 13–14.)  The Magistrate Judge disagreed.

The Magistrate Judge found that Petitioner's defaulted claim concerning Juror #117's knowledge of Clem Hill was insubstantial and that the cause exception under *Martinez v. Ryan*, 566 U.S. 1 (2012), did not excuse the procedural default.  (Doc. # 12, at 16.)   The Magistrate Judge also concluded that Petitioner had not demonstrated deficient performance by trial counsel or prejudice under *Strickland*'s standards and that, therefore, the "ineffective-assistance-of-trial counsel claim lack[ed] merit."  (Doc. # 12, at 16.)  The Magistrate Judge reasoned:

> Critically, while Petitioner asserts that Juror #117's knowledge of the decedent and [trial] counsel's failure to bring this alleged misconduct to the trial court's attention prejudiced Petitioner, . . . the state courts found Petitioner's similar allegation of Juror #202's knowledge of decedent, to be without merit.  Petitioner makes no showing that the state courts would have treated this allegation any different than his allegation of juror misconduct against Juror #202.

(Doc. # 12, at 16.)

## 4. *Petitioner's Objection to the Recommendation*

Petitioner contends that his trial counsel was ineffective for failing to raise Juror #117's encounters with the victim as grounds for a new trial.  He argues that, because Petitioner was *pro se* in his state post-conviction proceedings and because he believes his claim of ineffective assistance of trial is strong enough to establish

prejudice, this court should review his claim on the merits.  (Doc. # 17, at 16–18.)

Petitioner has failed to show error in the Magistrate Judge's conclusion, namely, that

Petitioner did not present a substantial claim that his trial counsel rendered

ineffective assistance of counsel.

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court of the United

States held that

> [w]here, under state law, claims of ineffective assistance of trial counsel
> must be raised in an initial-review collateral proceeding, a procedural
> default will not bar a federal habeas court from hearing a *substantial*
> claim of ineffective assistance at trial if, in the initial-review collateral
> proceeding, there was no counsel or counsel in that proceeding was
> ineffective.

*Id.* at 17 (emphasis added).  Here, Petitioner has not shown a substantial claim of

ineffective assistance of trial counsel.  A claim is substantial if it "has some merit."

*Id.* at 14; *see also Clark v. Comm'r, Ala. Dep't of Corrs.*, 988 F.3d 1326, 1331 (11th

Cir. 2021) (A substantial claim under *Martinez* "exists where a petitioner has shown

that reasonable jurists would find it debatable whether the petition states a valid

claim of the denial of a constitutional right." (quotation marks omitted)), *cert. denied*

*sub nom. Clark v. Hamm*, No. 21-6202, 2022 WL 516051 (U.S. Feb. 22, 2022).  The

claim is insubstantial for the following reasons.

First, according to Petitioner's account, Juror #117 did not realize that she

knew the decedent until after *voir dire*; hence, an evidentiary foundation is lacking

that she was dishonest during *voir dire* by not responding when the trial court asked

if any juror knew the victim, Clem Hill.  Petitioner has not demonstrated grounds for a new trial under the Supreme Court's test in *McDonough Power Equipment* because he has not shown that "a juror failed to answer honestly a material question on *voir dire*."  464 U.S. at 556.

Second, Petitioner's petition alleges that Juror #117 did not disclose her acquaintance with Clem Hill until 2017, which was long after the 2015 trial.  In 2017, Petitioner's direct appeal was over, and he was in the midst of litigating his state post-conviction petition.  Petitioner has failed to explain how Juror #117's failure to disclose her association with the victim is a sin that Petitioner's trial counsel must bear.  Petitioner has not pointed to evidence that trial counsel knew that the victim had visited the home of Juror #117 on occasions to hang out with her husband.  Without that knowledge, trial counsel cannot be blamed for his failure to move for a new trial.

Third, to the extent Petitioner asserts that a correct response from Juror #117 would have provided a valid basis for a challenge for cause and that his trial counsel would have stricken Juror #117, this argument is conclusory.  Juror #117 stated that, while she knew the decedent, she only knew him through her husband.  Petitioner has not pointed to any evidence that Juror #117's association with the victim affected her impartiality or that, had trial counsel known of Juror #117's knowledge, he would have moved to strike her from the jury.  For these reasons, Petitioner's claim

is insubstantial, and, thus, Petitioner has not established cause to excuse the default of his claim alleging ineffective assistance of trial counsel.

Petitioner's request for an evidentiary hearing also must fail.  Petitioner asks for an evidentiary hearing so that he can "flesh out" his claim alleging ineffective assistance of trial counsel.  (Doc. # 17, at 17.)  A merits hearing would be futile because it is plain that a hearing would not produce facts sufficient to entitle Petitioner to federal habeas relief on his claim.  *See Ledford v. Warden, Ga. Diagnostic Prison*, 975 F.3d 1145, 1164 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2832 (2021).

The Magistrate Judge did not err in concluding that Petitioner's claim alleging ineffective assistance of trial counsel is procedurally defaulted and that an evidentiary hearing is not warranted.

## IV.  CONCLUSION

Petitioner has failed to show that the Alabama state courts' rejection of his claims alleging ineffective assistance of appellate counsel was based on an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner also has not made the necessary showing to overcome procedural default on his claim alleging ineffective assistance of trial counsel.

Accordingly, it is ORDERED as follows:

(1)     Petitioner's objections (Doc # 17) are OVERRULED;

(2)     The Recommendation (Doc. # 12) is ADOPTED;

(3)     Petitioner's § 2254 petition is DENIED without an evidentiary hearing;

and

(4)     This action is DISMISSED with prejudice.

Final judgment will be entered separately.

DONE this 28th day of March, 2022.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE
